# CIRCUIT COURT OF THE CITY OF RICHMOND

In re Estate of
Gordon C. Raab,
deceased

## November 10, 1997

BY JUDGE RANDALL G. JOHNSON

This matter is before the court on the commissioner of accounts' petition to remove Barbara M. Rose as executor of the estate of Gordon C. Raab, who died on February 19, 1996, at age 83. At issue is whether Rose improperly collected fees for performing her duties under Raab's will before those fees were approved by the commissioner and, if so, whether such action on her part warrants her removal.

Gordon C. Raab loved animals, especially cats, and owned many pets. In fact, while her will left everything to her husband, she provided that if her husband predeceased her, which he did, specific bequests were to be made to specific beneficiaries and the residue was to be held in trust until the last to occur of the following events:

(1) The death of my mother, Thusnelda Knutzen Blassenham.
(2) The date of death of the last to die of all dogs, cats, or other living pets owned and maintained by me at the time of my death, or twenty-one years after the date of my death, whichever of said two dates shall first occur.

The trust was to be used to care for Raab's mother and pets, specifically providing that "[a]ll dogs and cats or other living pets owned and maintained by me in my residence at the time of my death shall be kept during the period of the ... trust fund at said residence for the duration of their natural lives, and said residence, including the contents thereof, shall be maintained in substantially the same manner as it was maintained at the time of my death ... ." The will named Raab's husband executor and Edward S. Hirschler, a

lawyer, trustee. When her husband died, she executed a codicil naming Rose executor. The will also contains the following provision:

I realize that if my husband predeceases me, the duties and responsibilities which my Executor and Trustee will assume are substantially greater than those customarily imposed upon the executor and trustee of an estate, and I therefore direct that my Executor, other than my husband, and my Trustee shall receive compensation on the principal and income of my estate for the services rendered by said Executor and Trustee from time to time commensurate with the time, effort, and skill expended in performing such services.

Rose qualified as executor on March 13, 1996. The revised inventory of Raab's estate shows personal property valued at $710,738 and real estate valued at $281,000. There is no report of income. In twenty-two separate payments beginning April 1, 1996, and ending November 29, 1996, Rose paid herself a total of $120,500 in fees for serving as executor. It is those fees that the commissioner challenges and that he cites as grounds for Rose's removal.

No Virginia statute sets the fee a fiduciary may charge an estate. As early as 1917, however, the Supreme Court accepted as "well settled" the principle that an executor is entitled to whatever fee is fixed by the will and that where a specific fee is not so fixed a fee equal to 5% of the assets coming into the hands of the executor is reasonable:

When a testator fixes the compensation for an executor or trustee under his will, and the executor or trustee named therein accepts the appointment, he is entitled to as much and is limited to as little, as the testator has fixed. In cases where the language of the testator is susceptible of more than one construction, the question becomes one of interpretation which the courts must settle by ascertaining the probable intention and understanding of the parties. Where no compensation at all is named in the will, the rule is that the allowance shall be reasonable, being usually five per cent on receipts, subject to increase or reduction of this rate under peculiar circumstances. These propositions are not controverted and are well settled.

*Williams v. Bond*, 120 Va. 678, 686-687, 91 S.E.2d 627 (1917).

The 5% fee recognized in *Williams* has not changed with the passage of time. In *Clare v. Grasty*, 213 Va. 165, 191 S.E.2d 184 (1972), the court said:

The trial court approved a commission in this case of five percent of the Virginia assets. ... Five percent is the usual commission.

213 Va. at 173. *See also Bickers v. National Bank, Ex'r*, 201 Va. 257, 262, 110 S.E.2d 514 (1959).

In the matter at hand, the fees that Rose has paid to herself so far, $120,500, are just over 12% of the value of the assets coming into her hands. That amount is greater than the 5% presumed to be reasonable. Raab, however, anticipated in her will that the executor would be entitled to more than the usual fee, and specifically provided for a fee "commensurate with the time, effort, and skill expended in performing" the executor's duties. Raab also provided that the executor could pay herself a fee "from time to time," thus authorizing fees before final distribution of the estate.

In fact, an executor may, in appropriate cases, receive fees before distribution even when not specifically authorized to do so in the will:

Where the settlement of an estate is not completed within a reasonably short period of time, through no fault of the executor, it is within the power of the chancellor, in the exercise of his discretion, to make, during the course of and prior to the close of the administration, an allowance for such part of the compensation as may then be fairly regarded as earned.

*Bickers, supra,* 201 Va. at 263.

The problem is that Rose has not done a very good job of documenting what services she has performed in order to justify the fees she has been paid and that she has paid herself what she should have known were at least questionable fees without prior approval of the commissioner.

At the hearing on the commissioner's petition, Rose attempted to explain what she has done to earn the fees she paid to herself. She did not do well at doing so. Whether this was because she did not perform duties sufficient to warrant her fees or because she was not properly prepared for the hearing, the court does not know. In fact, the court made it clear at the hearing that it was not going to decide now whether Rose's fees are reasonable, but only whether her collecting those fees without prior approval warrants her removal as executor. What especially concerns the commissioner is that Rose has apparently spent the fees she did collect so that if the commissioner and the court eventually do disapprove those fees, she will not have a "ready" ability to reimburse the estate. While this does create a potential for a very real

problem, that potential will not be diminished by removing her as executor at this point. To the contrary, her removal would necessitate the appointment of a successor fiduciary who would also be entitled to a fee, thus diminishing the estate even more. In addition, from the evidence presented at the hearing, the court will be surprised if Rose's duties in complying with the terms of Raab's will, especially the requirements relating to Raab's pets, will not eventually entitle Rose to *something* above the normal 5% fee. The court is convinced that it is better to allow Rose, who was Raab's attorney-in-fact and obviously someone Raab trusted very much, to continue to administer the estate than to bring someone else in. If it is later determined that Rose is not entitled to all of the fees she has collected, she will be made to repay the estate somehow, whether or not she remains executor. She will not be removed now.

Although the court will not grant the commissioner's petition to remove Rose as executor, the court will put two restrictions on her. First, the court will require that beginning today, Rose keep accurate and reasonably detailed records of all services she performs as executor and for which she plans to seek payment. Second, the court will prohibit Rose from receiving any further fees from Raab's estate without prior approval of the commissioner of accounts or, if such approval is requested and denied, the approval of this court. The court believes that by doing this, the best person for carrying out the wishes of the testator will continue in that capacity, and whatever fees she is eventually deemed to be entitled to can be set without further damage — if there has been damage already — to the estate.