618 S.E.2d 408

**George B. SUMMERS and Ronald Fertile, Petitioners Below, Appellants,**

v.

**THE WEST VIRGINIA CONSOLIDATED PUBLIC RETIREMENT BOARD, Respondent Below, Appellee.**

No. 32508.

Supreme Court of Appeals of West Virginia.

Submitted: June 7, 2005.

Filed: July 6, 2005.

William B. Summers, Esq., Parkersburg, for Appellants.

Susan B. Saxe, Esq., Bowles Rice McDavid Graff & Love, Charleston, for Appellee.

The Opinion of the Court was delivered PER CURIAM.

Justice STARCHER concurs and reserves the right to file a concurring opinion.

PER CURIAM.

Appellants George B. Summers and Ronald Fertile appeal the August 16, 2004, order of the Circuit Court of Kanawha County that denied Appellants' request to include lump-sum payments for accumulated vacation pay in the calculation of their final average salaries for the purpose of determining their retirement benefits from the Teachers Retirement System. After careful consideration of this matter, we reverse.

## I.

## FACTS

Appellants George B. Summers and Ronald F. Fertile are members of the Teachers

Retirement System and were employed by the Wood County Board of Education (hereinafter "Wood County" or "BOE"). Mr. Summers was an employee of the Wood County BOE for approximately 35 years, and Mr. Fertile was an employee for approximately 37 years.

Wood County affords its 261-day contract employees the right to accrue vacation time at a rate of two days per month, and accumulate and carry over up to 48 days from year to year. Employees are paid for these unused vacation days in a lump sum upon cessation of service. At one time, Wood County withheld retirement system contributions from the lump sums which it paid to retiring 261-day contract employees for accrued vacation days. The County also reported such sums to the Consolidated Public Retirement Board as if these sums were part of the retiring employees' salary for their last year of employment.[1] Of course, the inclusion of lump sum vacation payments in an employee's final year salary enhances the employee's retirement benefits.

In 1999, Appellee West Virginia Consolidated Retirement Board (hereinafter "the Retirement Board" or "the Board")[2] objected to this policy and determined that lump sum payments for unused vacation days are not to be included in salaries for the purposes of computing retirement benefits. This was challenged by a retiring employee and in *Kiser v. West Virginia Consolidated Public Retirement Board*, No. 00–P–118 (December 21, 2000), the Circuit Court of Wood County ruled that such lump sum pay for unused vacation days were to be included in employees' salaries for the purpose of calculating retirement benefits.

After the *Kiser* decision, the Retirement Board enacted a new rule, 162 C.S.R. § 8–

5.4, which became effective April 10, 2002, and which provides:

> If the member is paid in a lump sum for accrued unused leave at the conclusion of the member's employment, the Board shall not consider the lump sum payment as compensation or salary in computing a member's final average salary.

Mr. Summers and Mr. Fertile both retired from the Wood County BOE in 2002, and their final day of employment was June 30, 2002. Both received a lump sum payment for 48 days of unused vacation time which was initially added to their final year's salary. The Retirement Board, however, instructed the Wood County BOE to deduct the lump sum payments from the salary computations which resulted in a $13,198.72 decrease in salary for 2001–2 for Mr. Summers and a $10,965.68 decrease for Appellant Fertile. According to Appellants, this adjustment resulted in an estimated reduction of benefits for Mr. Summers of $154.00 per month and of $135.00 per month for Mr. Fertile.

On appeal, a hearing officer of the Retirement Board recommended denial of Appellants' request to include lump sum payments for accumulated vacation days in the calculation of their retirement benefits. The Retirement Board adopted the hearing officer's recommended decision. The Retirement Board's decision was subsequently affirmed by the Circuit Court of Kanawha County. Appellants now appeal the circuit court's order.

## II.

### STANDARD OF REVIEW

■ On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards con-

---

1. According to W.Va.Code § 18–7A–26(a) (2002), in effect at the time Appellants retired:
 Upon establishment of eligibility for a retirement allowance, a member shall be granted an annuity which shall be the sum of the following:
 (a) Two percent of the member's average salary multiplied by his or her total service credit as a teacher. In this paragraph "average salary" shall mean the average of the highest annual salaries received by the member

during any five years contained within his or her last fifteen years of total service credit[.] This code section was amended effective April 9, 2005.

2. The West Virginia Consolidated Public Retirement Board administers all of the public retirement plans in the State including the teachers retirement system. *See* W.Va.Code § 5–10D–1 (2005).

tained in W.Va.Code § 29A–5–4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syllabus Point 1, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996).

## III.

### DISCUSSION

 The legislative rule at issue, 162 C.S.R. § 8–5.4, was promulgated by the Retirement Board and approved by the Legislature. This Court has recognized that "[a] regulation that is proposed by an agency and approved by the Legislature is a 'legislative rule' as defined by the State Administrative Procedures Act, *W.Va.Code,* 29A–1–2(d) [1982], and such a legislative rule has the force and effect of law." Syllabus Point 5, *Smith v. West Virginia Human Rights Com'n,* 216 W.Va. 2, 602 S.E.2d 445 (2004). Under our law, "[a] valid legislative rule is entitled to substantial deference by the reviewing court. As a properly promulgated legislative rule, the rule can be ignored only if the agency has exceeded its constitutional or statutory authority or is arbitrary or capricious." Syllabus Point 4, in part, *Appalachian Power Co. v. State Tax Dept.,* 195 W.Va. 573, 466 S.E.2d 424 (1995). Appellants do not contend that the rule was improperly proposed or approved, or that the rule is ambiguous. Rather, they challenge the rule's constitutionality.

Appellants first argue that the Retirement Board's 2002 legislative rule is both facially unconstitutional and unconstitutional as applied. According to Appellants, the rule violates equal protection principles in that it results in similarly situated employees being treated unequally. Specifically, some retired members of the teacher's retirement system have been permitted to include lump sum payments for unused vacation days in the calculation of retirement benefits while others, such as Appellants, have not. Further, assert Appellants, the Retirement Board's application of the rule is arbitrary and capricious. Appellants explain that the Retirement Board's method of finding the imper-

missible use of lump sum vacation pay in a retiree's final salary calculation is to look at the discrepancy in the final year's salary compared to the previous year's salary. Unless the discrepancy is noticeable, probably more than $2,000, it most likely is not questioned. Thus, an employee who has only a few unused vacation days included in the final year's salary calculation will likely get to include those in the retirement calculation, while those with a large number of vacation days like Appellants will be prevented from doing so. Again, conclude Appellants, two classes of similarly situated employees are created.

The Retirement Board counters that the 2002 legislative rule is neither facially nor in application violative of equal protection principles. First, says the Retirement Board, no offensive classification is created by the 2002 rule. To the contrary, the rule applies uniformly to all participants in the retirement system. Second, even if a suspect classification is created, it is not constitutionally offensive because it is reasonably related to the achievement of the legitimate state purposes of controlling costs and providing for adequate funding of the retirement system.

 We agree with the Retirement Board that the 2002 rule at issue is neither unconstitutional on its face or as applied. Assuming that the legislative rule at issue creates a classification, this Court has held:

" 'Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 10 of Article III of the West Virginia Constitution, which is our equal protection clause.' Syllabus Point 7, [as modified,] *Atchinson v. Erwin,* [172] W.Va. [8], 172 W.Va. 8, 302 S.E.2d 78 (1983)." Syllabus Point 4, as modified, *Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery*

*Co.*, [174] W.Va. [538], 174 W.Va. 538, 328 S.E.2d 144 (1984).

Syllabus Point 4, *Gibson v. W.Va. Dept. of Highways*, 185 W.Va. 214, 406 S.E.2d 440 (1991). It is clear to us that the legislative rule at issue is reasonably designed to serve the legitimate governmental purpose of controlling the amounts paid in retirement benefits and to thereby ensure continued adequate funding of the Teachers' Retirement System. Therefore, we find the rule to be constitutional on its face.

 We likewise find that the rule is constitutional as applied. "[A] statute fair on its face but administered or applied in a discriminatory manner runs afoul of the equal protection clause of the Federal Constitution. But it is equally well settled that purposeful discrimination may not be assumed or merely asserted but must be proven." *Brickhouse v. Commonwealth*, 208 Va. 533, 538, 159 S.E.2d 611, 615 (1968) (citations and internal quotation marks omitted). *See also Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir.2003) (explaining that where inmate did not allege membership in protected class or violation of fundamental right, he must show that prison officials treated similarly situated classes of inmates differently, and that differing treatment was unrelated to rational penal interest and was intentional or purposeful discrimination).[3] In the instant case, the facts show nothing more than an administratively less-than-perfect system and do not rise to the level of intentional, purposeful, or arbitrary discrimination that is offensive to the equal protection clause.

 Finally, Appellants contend that they relied to their detriment on including the unused vacation pay in their final year's salary when deciding to retire. Appellants base this contention on *Booth v. Sims*, 193 W.Va. 323, 456 S.E.2d 167 (1995), in which this Court held that the State cannot eliminate a retirement expectancy without just compensation once an employee has substantially relied on it to his or her detriment.

The Retirement Board responds that the detrimental reliance principle in *Booth v. Sims* is not applicable here. First, says the Retirement Board, the retirement system plan has never contained any provisions to permit the inclusion of lump sum vacation benefits in final salary calculations for retirement purposes. Therefore, there was no promise upon which to detrimentally rely. Second, evidence below indicates that the Wood County BOE began including lump sum vacation pay in salary calculations in 1996–97, by which time Appellants had been employed by Wood County for more than 30 years. Third, Wood County commenced the practice of including lump sum payments in salary calculations without disclosing to the Retirement Board the true character of the calculations reported to the Retirement Board for pension benefit purposes, and without eliciting the Retirement Board's position on the legality of the practice. Finally, Appellants have acknowledged that prior to retirement, they neither requested nor received any benefit estimates from the Retirement Board which included their anticipated lump sum payments for unused vacation days, and made no inquiries to the Retirement Board regarding the status of any legislative intervention on the issue.

In analyzing Appellants' detrimental reliance argument, the Hearing Examiner agreed with the Retirement Board and reasoned as follows:

> *Booth* principally stands for the proposition that government cannot take away contractual promise of pension benefits after an employee has relied thereon to his detriment, such detrimental reliance being presumed after ten years of service while the promise shall have been made. That which is lacking in the present circumstance, at least, is the contractual promise as enunciated by the statutes and Legislative rules defining the [Teacher Retirement System] pension plan. There has just never been such a promise upon which these applicants could have relied. All

---

**3.** Despite our finding that the Retirement Board's inconsistent application of 162 C.S.R. § 8–5.4 does not violate the equal protection clause, this Court is troubled by the Retirement Board's hit-and-miss approach to determining whether lump-sum vacation pay is included in employees' final year salary calculations. We urge the Retirement Board to adopt a more efficient system to ensure the uniform application of the rule.

that occurred with the adoption of CSR § 162–8–5.4 was to render certain that which had never been promised in the first place. *Booth,* it is concluded, has no proper application here.

We believe that the Hearing Examiner's analysis is correct. *Booth* concerned substantive amendments to existing provisions governing the state troopers' pension system such as an increase in the monthly payroll deduction from state troopers' salaries; a prohibition on the troopers' use of accumulated but unused annual and sick leave as credit toward years of service in determining eligibility for retirement benefits; and a reduction in the public safety retirement annual cost of living adjustment. In other words, promises of future benefits were actually altered. In contrast, in the instant case the Teacher Retirement System pension plan never contained a provision permitting the inclusion of lump-sum vacation pay in employees' final year salary calculations for the purpose of determining retirement benefits. Thus, unlike in *Booth,* the Teachers' Retirement System had not made a promise on which the teachers had relied. Therefore, the detrimental reliance principle set forth in *Booth* is not applicable to the present facts.

■ In sum, we have determined that the clear provisions of 162 C.S.R. § 8–5.4 are constitutionally valid and that the principal of detrimental reliance set forth in *Booth* does not prevent its application to Appellants. However, we find that the rule should not be applied to Appellants for a different reason. According to W.Va.Code § 2–2–10(bb) (1998), "[a] statute is presumed to be prospective in its operation unless expressly made retrospective[.]" This Court has held that "[t]he presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect." Syllabus Point 4, *Taylor v. State Compensa-*

*tion Commissioner,* 140 W.Va. 572, 86 S.E.2d 114 (1955). Because legislative rules have the force and effect of statutes, the presumption of prospective application applies equally to such rules.

■ As indicated above, the legislative rule at issue became effective on April 10, 2002. The record reveals that Mr. Fertile made a request for an estimate of retirement benefits in February 2002, and applied for retirement benefits that same month. Therefore, this Court believes that Mr. Fertile's retirement process had progressed sufficiently far by the time 162 C.S.R. § 8–5.4 became effective that the legislative rule should not apply to the calculation of his retirement benefits. We find the same to be true of Mr. Summers. Although Mr. Summers did not apply for retirement benefits until April 19, 2002, nine days after 162 C.S.R. § 8–5.4 became effective, the record indicates that Mr. Summers filed a "Benefit Estimate Request," in which he requested an estimate of his retirement benefits from the Teachers Retirement System, in December 2001, and indicated that his last day of employment would be June 30, 2002. Based on this, we find that the Retirement Board must include lump-sum payments for accumulated vacation pay in the calculation of Appellants' final average salary determination of benefits from the Teachers Retirement System in accord with *Kiser v. West Virginia Consolidated Public Retirement Board, supra,* which was the law in effect prior to 162 C.S.R. § 8–5.4. Accordingly, the circuit court's order to the contrary is reversed.[4]

## IV.

### CONCLUSION

For the reasons set forth above, this Court reverses the August 16, 2004, order of the Circuit Court of Kanawha County, and we direct the West Virginia Consolidated Public Retirement Board to include lump-sum pay-

---

**4.** During oral argument, counsel for the Retirement Board discussed the possibility of the Board's investigation of teacher retirement benefit determinations made from 1996, when the Wood County BOE began including lump-sum vacation pay in employees' final average salary

calculations, up to the time of the *Kiser* decision for the purpose of adjusting benefits to accord with 162 C.S.R. § 8–5.4. Obviously, the prospective application of C.S.R. § 162–8–5.4 forecloses any such retroactive adjustment of benefits.

ments for accumulated vacation pay in the calculation of Appellants' final average salary determination of benefits from the Teachers Retirement System.

Reversed.

STARCHER, J., concurring.

I concur with the majority's holding that the legislative rule properly forbids the inclusion of lump-sum benefits in a "last year's salary," and that this rule is not constitutionally offensive.

But I have questions about allowing one small group of employees to enjoy a "windfall"—while others, who retired at the same time, may have missed out on the same benefits.

If the new regulation really "changed the law," then perhaps *all* employees who retired prior to the new regulation are entitled to a recalculation.

Accordingly, I hesitantly concur.